NOT FOR PUBLICATION                          [Dkt. Ent. 46]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

### CAMDEN VICINAGE

| | |
|---|---|
| RICHARD MAY,<br><br>    Plaintiff,<br><br>              v.<br><br>RONALD SANNA, JR., and<br>TOWNSHIP OF LUMBERTON,<br><br>    Defendants. | Civil No. 09-3253 (RMB/AMD)<br><br>**OPINION** |

Appearances:

Surinder K. Aggarwal, Esq.
William H. Buckman, Esq.
The William H. Buckman Law Firm
110 Marter Avenue, Suite 209
Moorestown, New Jersey 08057

        Attorneys for Plaintiff

Betsy G. Ramos, Esq.
Capehart & Scatchard, P.A.
8000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054

Latonya N. Bland, Esq.
Law Offices of Richard L. Press & Associates, LLC
23 E. Black Horse Pike
Pleasantville, New Jersey 08232

        Attorneys for Defendants


**BUMB**, UNITED STATES DISTRICT JUDGE:

        The plaintiff, Richard May ("Plaintiff"), alleges violations

of the United States and New Jersey Constitutions by the
defendants, Officer Ronald Sanna, Jr. ("Sanna"), and the Township
of Lumberton (collectively "Defendants").  Plaintiff contends
that following an altercation with a process server who refused
to leave his property, Officer Sanna used excessive force against
him and arrested him without probable cause.  Defendants have
moved for summary judgment on several claims.  First, Officer
Sanna invokes the protections of qualified immunity and moves for
summary judgment on Plaintiff's claims for excessive force and
false arrest under 42 U.S.C. § 1983.  Second, Lumberton Township
seeks summary judgment on Plaintiff's § 1983 claim for failure to
train and supervise its officers.  Third, Defendants move to
dismiss, as a matter of law, Plaintiff's § 1983 claim for
conspiracy in Count Two and his First, Fifth, Sixth, and Eighth
Amendments claims in Count One.  Fourth, Defendants move to
dismiss Plaintiff's request for punitive damages.  Fifth,
Defendants move to bar Plaintiff's expert report under Federal
Rule of Evidence 702.  For the following reasons, Defendants'
motion is granted in part and denied in part.

## I.    Background[1]

On July 2, 2007, between 6:30 and 7:00 a.m., Anthony

---

[1] All background facts are drawn from the parties' Rule 56.1
Statements of Material Fact and are construed in the light most
favorable to Plaintiff.  See Kopec v. Tate, 361 F.3d 772, 775 (3d
Cir. 2004), cert. den'd, 543 U.S. 956 (2004).

Chirichello arrived at Plaintiff's residence in Lumberton, New
Jersey, to serve a subpoena on Plaintiff's son, Douglas May.
(Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶ 1.)
Carol May, Plaintiff's wife, was just stepping out of the shower
at the time and saw Chirichello looking at her through the
bathroom window.  Hearing his wife scream that someone was
banging on the front door, Plaintiff went to the door and
encountered Chirichello.  Plaintiff asked him for his name and
the purpose of his visit, and Chirichello responded that he was
looking for Plaintiff's son, Douglas May.  Having already checked
his son's room and found it empty, Plaintiff informed Chirichello
that his son was not home.  Plaintiff asked what Chirichello
wanted with his son, and Chirichello replied that he was there to
serve a subpoena on him.  Plaintiff advised Chirichello that he
would be able to serve Douglas at his office, located
approximately two miles away, because he worked for Plaintiff and
would be at work within forty minutes.

Chirichello became irritated, stating that he had already
wasted enough time attempting service on Douglas.  Plaintiff
repeatedly asked Chirichello to leave, but he refused to do so.
Finally, Plaintiff threatened that he would come out from behind
the screen door if Chirichello did not leave.  Chirichello still
refused to leave the porch, at which point Plaintiff started out
the door.  Chirichello ran and got into his car, which was parked

3

in Plaintiff's driveway.  Plaintiff approached the car and
advised Chirichello that he was trespassing, that he needed to
get off his property, and that Plaintiff was going to call the
police.  Chirichello responded that he was already calling the
police.

According to the transcript of Chirichello's 911 call, he
indicated to the dispatcher that the person he was trying to
serve was "out of control" and that he had to get in his car and
lock the door.  (Pl.'s SUMF ¶ 15, Def.'s Resp. ¶ 15, 911 Call Tr.
2:15-21, Pl.'s Ex. 6.)  He did not clarify that Plaintiff was <u>not</u>
in fact the person he was trying to serve.  Chirichello also
advised the dispatcher that Plaintiff "was going to attack" him.
(<u>Id.</u> at 4:15.)  The 911 dispatcher, however, reported that the
"subject <u>tried to assault</u>" Chirichello.  (<u>Id.</u> at 5:4-5 (emphasis
added).)[2]  Plaintiff again advised Chirichello to leave his
property because he was trespassing.  Chirichello did not respond
and instead remained in his car, which was parked on Plaintiff's
property.  Plaintiff never made any physical contact with

---

[2] The Court notes that neither party clarified what part of the
911 dispatch, if any, Officer Sanna actually heard.  Sanna
testified that he arrived at the scene believing he had been
dispatched in reference to "a disorderly person who was . . .
assaulted", but he also stated that he needed to check the "CAD
system." (Sanna Dep. Tr. 67:12-20, Pl.'s Ex. 5.)  CAD presumably
refers to "Computer-Aided Dispatch". <u>United States v. Thornton</u>,
258 F. App'x 432, 433 (3d Cir. 2007). For purposes of this
motion, then, the Court presumes that Sanna arrived on the scene,
having heard the dispatch as it was reflected in the transcript
of the 911 call. (Pl.'s Ex. 6.)

Chirichello.

Plaintiff then returned to his house, where he and his wife finished getting dressed.  They noticed another car drive onto their property.  This car belonged to Detective Edward Dellorco. When Detective Dellorco arrived, he and Chirichello exited their respective vehicles and began to converse.  Chirichello maintains, however, that he did not have a substantive conversation with any of the officers when they arrived at Plaintiff's residence.

Plaintiff and his wife then saw three more law enforcement vehicles drive onto their property, one of which belonged to Officer Sanna.  Upon seeing their arrival, Plaintiff exited his house and walked to his driveway.  According to Plaintiff's testimony, he pointed to Chirichello and stated to the officers that he wanted Chirichello off of his "f----- property."  (Pl.'s Dep. 69:8-13, 70:11-24.)  Sanna exited his vehicle and quickly approached Plaintiff with an angry expression on his face. (Pl.'s Dep. 74:1-21.)  Plaintiff stood still.  (Id.)  Sanna walked up to him, bumped him in the chest, and yelled that Plaintiff had chest-bumped him.[3]  (Id.)  Officer Sanna then pushed Plaintiff a couple of feet and told him to back up.  He

---

[3] Defendants dispute this, maintaining that Plaintiff chest-bumped Officer Sanna.  For purposes of this motion, however, the Court construes the facts in a light most favorable to Plaintiff and therefore credits his sworn testimony recounting these events.

then asked Plaintiff to go to his porch and sit down.[4]  He did
not, however, forbid Plaintiff from entering his home.  Nor did
he ask Plaintiff for identification, make any inquiry into what
had just occurred, or ask Plaintiff why he wanted Chirichello off
his property.

Plaintiff returned to his porch and went to the front door
to talk to his wife, who was standing behind the screen door.  He
had his hand on the screen door and, after a few seconds, started
opening the door to go inside.  Plaintiff testified that he
wanted to "get away from the situation" with Sanna, since he had
"already been [chest] bumped [and] pushed."  (Pl.'s Dep. 82:22-
23.)  Meanwhile, Officer Sanna had approached Plaintiff from
behind.  As Plaintiff opened the door a few inches, Sanna struck
him in the kidney area of his lower back.  Plaintiff testified
that the force of the blow knocked him off his feet, and he

---

[4] Plaintiff notes that Sanna first testified that he "commanded"
Plaintiff to sit on the porch and later retreated from this
terminology, testifying that he "asked" Plaintiff to sit on the
porch.  (Pl.'s SUMF ¶ 33 (citing Sanna Dep. 77:9-13, 84:21-24,
Pl.'s Ex. 5).)  The record before the Court, however, only
includes the part of Sanna's testimony where he states that he
"asked" Plaintiff to sit on the porch.  (Sanna Dep. 84:21-24.)
Defendants deny Plaintiff's assessment that Sanna provided
contradictory testimony and cite to another portion of Sanna's
testimony, where he states that he "told" Plaintiff to have a
seat in order to diffuse the situation (Def.'s Resp. ¶ 33 (citing
Sanna Dep. 64:20-65:1, Pl.'s Ex. 5).)  Viewing all facts and
reasonable inferences in the light most favorable to Plaintiff,
the Court presumes that Officer Sanna asked Plaintiff to sit on
his porch.

landed on the side of his house, after slamming into a wall.[5]
(Pl.'s Dep. 78:1-6, 93:15-22.)  According to Plaintiff, neither
Officer Sanna nor any of the other officers said anything to him
after Sanna asked him to sit on the porch and before Sanna struck
him.  Plaintiff testified that only after striking him did
Officer Sanna yell "you're resisting arrest."  (Pl.'s Dep. 97:13-
16.)

Plaintiff testified that he did not resist arrest or make
any attempt to resist Sanna's efforts to pull his hands behind
his back and handcuff him.  (Pl.'s Dep. 97:19-23.)  Detective
Dellorco confirmed that Plaintiff was not "actively punching or
kicking or fighting."  (Dellorco Dep. 21:23-22:16.)  Sanna then
handcuffed Plaintiff and walked him to a police car.

Plaintiff was arrested and charged with Obstructing
Administration of Law or Other Governmental Function in violation
of N.J. Stat. Ann. § 2C:29-1(b), Resisting Arrest, in violation

---

[5] Officer Sanna disputes this.  (Def.'s Resp. ¶ 41 (citing Sanna
Dep. 93:1-8, Pl.'s Ex. 5).)  According to Sanna, he exerted force
on Plaintiff because he feared for his safety, since he believed
Plaintiff was going to punch him.  He testified that he took
Plaintiff's left hand and pulled him back from the front door,
and while doing so, Plaintiff broke free from his grasp.  He
therefore grabbed Plaintiff's left hand and pinned him against
the wall so that Plaintiff could not spin around on him.  Given
summary judgment posture, however, the Court does not credit
Sanna's version of events, since it conflicts with Plaintiff's
testimony.  See Rivas v. City of Passaic, 365 F.3d 181, 199 (3d
Cir. 2004) (finding that a police officer accused of excessive
force was not precluded from arguing that he reasonably perceived
the facts to be different from those alleged by the plaintiff,
but that contention must be considered at trial and not at the

of N.J. Stat. Ann. § 2C:29-2(a)(1), and Harassment directed toward Chirichello, in violation of N.J. Stat. Ann. 2C:33-4C. (Pl.'s Exs. 34-35.)  Sanna contends that he arrested Plaintiff for obstruction because he interfered with his investigation by trying to walk into his house.

Plaintiff testified that he had difficulty walking to the police car and getting into it, due to the fact that Sanna had injured his back.  According to Plaintiff, Sanna had handed him over to another officer, but after noticing Plaintiff's difficulty getting into the police car, he ran over to Plaintiff and told him he had better get into the car or he himself would physically put Plaintiff into the car.

Plaintiff arrived at the Lumberton police station, where he was handcuffed to a bench for approximately one hour before being released.  He testified that during this time, he experienced great difficulty sitting on the bench because of back spasms, and he therefore had to kneel on one leg in order to keep his back straight.  According to Plaintiff, when Sanna observed this, he began to yell at Plaintiff and ordered him to sit on the bench. Plaintiff advised Sanna that he was experiencing back spasms.

Plaintiff testified that as a result of Sanna striking him, he suffered a ruptured disc in his back, frequent numbness in his right leg, a torn meniscus in his left knee, and possible liver

summary judgment stage).

and kidney damage.  He also stated that he now suffers from
severe post-traumatic stress disorder.  Officer Sanna denies that
Plaintiff suffered any injury as a result of his conduct.

On July 28, 2008, Plaintiff appeared in the Lumberton
Township Municipal Court before the Honorable Joseph P. Montalto.
Pursuant to a plea agreement reached with the municipal
prosecutor, Plaintiff pled guilty to an amended charge of
harassment for using "offensively coarse language" toward
Chirichello, in violation of N.J. Stat. Ann. 2C:33-4(a).[6]  Upon
the application of the municipal prosecutor, Judge Montalto
dismissed the remaining charges against Plaintiff.

The parties agree that the Lumberton chief of police has
complete authority over all police personnel, functions and
operations.  Lumberton police officers are required to
participate in the police department's training programs, which
are approved by the police chief.  (Police Manual, Pl.'s Ex. 10
at 152.)  The State of New Jersey also mandates certain training
for police officers.  (N.J. Div. of Crim. Justice, Mandatory In-
Service Law Enforcement Training, Pl.'s Ex. 31.)  The record
reflects that on October 23, 2004, and June 13, 2007 (less than
three weeks before this incident), Sanna received training on the

---

[6] Defendants do not contend that this action is barred by <u>Heck v.
Humphrey</u>, 512 U.S. 477, 481-89 (1994).  Indeed, a successful §
1983 claim for false arrest does not necessarily impugn a state
court conviction.  <u>See</u>, <u>e.g.</u>, <u>Wallace v. Kato</u>, 549 U.S. 384, 393-
94 (2007); <u>Montgomery v. DeSimone</u>, 159 F.3d 120, 126 n.5 (3d Cir.

use of force, as well as other subject matters.  (Pl.'s Ex. 9.)

Plaintiff notes that Sanna is currently a defendant in a civil action pending in this district, Gunter, et al., v. Township of Lumberton, et al., Civil Action No. 07-4839 (NLH/KMW), which alleges claims for excessive force and wrongful death by the estate of Albert Gunter.  (Pl.'s SUMF ¶ 75.)  The facts giving rise to the Gunter case occurred on November 10, 2006.

Sanna filed "use of force" reports with the Lumberton Township Police Department for six separate incidents during the fifteen months prior to the incident here.[7]  (Pl.'s Exs. 17-22.)

---

1998). Accordingly, the Court does not consider this issue.
[7] Plaintiff does not distinguish between the use-of-force reports filed prior to this incident and those filed after.  (See Pl.'s SUMF ¶ 94.)  For purposes of determining supervisory liability, however, the relevant inquiry is whether the municipality had "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances" which could have "communicated a message of approval to the offending subordinate," thereby causing the constitutional violation. Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998); see also City of Canton v. Harris, 489 U.S. 378, 398 (1989) ("[M]unicipality may be liable if it had notice of prior misbehavior by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts.") (emphasis added); Hernandez v. Borough of Palisades Park Police Dep't, 58 F. App'x 909, 913 (3d Cir. 2003), cert. den'd, 540 U.S. 982 (2003) (for supervisory liability, policymakers must be aware of similar unlawful conduct in the past but fail to take action to prevent future violations) (emphasis added).
Similarly, Plaintiff cites to the fact that Beverly Marinelli, a former Lumberton Township Councilwoman, approached Lumberton Police Chief Jeffrey Smith to express concerns about Officer Sanna after she felt he had improperly stopped and ticketed her.  (Smith Dep. 70:4-25, Pl.'s Ex. 11.)  Since Plaintiff represents that Marinelli told this to Police Chief

According to Sanna, he has been the subject of an Internal Affairs investigation relating to his use of force three times. Only one of these investigations, however, occurred prior to the incident at issue here, and that was resolved in Sanna's favor.[8] (Sanna Dep. 53:5-12, Pl.'s Ex. 5.)

## II. Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if

---

Smith (see Pl.'s Opp. Br. 27), and since Smith did not become chief of police until 2008, (see Smith Dep. 8:7-14), the Court construes this to mean the conversation took place after 2007, when this incident occurred. There is nothing in the record to indicate otherwise, and the Court therefore has no reasonable basis to infer such. Thus, Marinelli's statement does not bear on Lumberton's liability in causing the offending conduct.

[8] Again, Plaintiff does not distinguish between the Internal Affairs investigations that occurred prior to this incident and those that occurred after. (See Pl.'s SUMF ¶ 94.) As discussed, supra, n.7, the relevant inquiry is what the Lumberton police chief knew at the time this incident occurred in July 2007. Of the three investigations, one occurred as a result of this incident, and a second occurred after this incident in April 2008. (Pl.'s Ex. 29.) Only the investigation into Gunter's death in November 2006 occurred prior to this incident.

[9] Pursuant to amendments to the Federal Rules of Civil Procedure in December 2010, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute", this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a) advisory committee's note

it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 248.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the non-moving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

_____

(emphasis added).

<u>Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  <u>Anderson</u>, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

**III. Discussion**

**A.   Section 1983 Claims**

Plaintiff alleges claims for excessive force and false arrest pursuant to 42 U.S.C. § 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Therefore, to state a claim under this section, a plaintiff must establish two elements:  (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law."  <u>West v.</u>

Atkins, 487 U.S. 42, 48 (1988).  Here, the parties only dispute
whether Plaintiff suffered a violation of his constitutional
rights.

Courts recognize that police officers "performing
discretionary functions are immune 'from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  Lamont v. New Jersey, 637
F.3d 177, 182 (3d Cir. 2011) (quoting Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982)).  To determine whether an officer is
entitled to qualified immunity from suit, courts ask two
questions: "(1) whether the officer violated a constitutional
right," and "(2) whether the right was clearly established, such
that it would have been clear to a reasonable officer that his
conduct was unlawful in the situation he confronted."  Id.
(quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (internal
quotations and brackets omitted)).  As for this second question,
the Court's inquiry "must be undertaken in light of the specific
context of the case, not as a broad general proposition."
Saucier, 533 U.S. at 201.  Importantly, the officer seeking to
invoke the protections of qualified immunity carries the burden
of proving its applicability.  See Reedy v. Evanson, 615 F.3d
197, 223 (3d Cir. 2010), cert. den'd, 131 S.Ct. 1571 (2011).

Although the Court has discretion as to which issue to

address first, <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 818 (2009), the Court begins by determining whether Officer Sanna violated Plaintiff's constitutional rights.

### 1.   Excessive Force Claim

### a.   Constitutional Violation

To prevail on a Fourth Amendment excessive force claim, a plaintiff "must show that a seizure occurred and that it was unreasonable under the circumstances." <u>Lamont</u>, 637 F.3d at 182-83 (citing <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 599 (1989); <u>Graham v. Connor</u>, 490 U.S. 386, 395-96 (1989)). Because it is undisputed that a seizure occurred in this case, the only question before the Court is whether it was unreasonable.

In determining the reasonableness of the force used, courts balance the government interests at stake against the intrusion on the individual's Fourth Amendment rights. <u>Graham</u>, 490 U.S. at 396. This analysis requires careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396 (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985)). Courts also consider "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the

action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (internal quotations and citation omitted).  In the Third Circuit, courts take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force."  Rivas, 365 F.3d at 198 (citing Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999)).

Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," since "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving."  Ryburn v. Huff, -- U.S. --, 132 S.Ct. 987, 992 (Jan. 23, 2012) (quoting Graham, 490 U.S. at 396-97).  The court must therefore conduct its balancing test in light of the facts that were available to the officer at the time he acted.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (citing Maryland v. Garrison, 480 U.S. 79, 85 (1987)).  However, whether a particular use of force was reasonable in a given situation usually presents a question for the jury.  Rivas, 365 F.3d at 198 (citing Abraham, 183 F.3d at 290).

It is true that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,

violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396
(internal quotations and citation omitted).  Given the facts
here, however, a jury could conclude that Officer Sanna used
objectively unreasonable force against Plaintiff.

When he arrived at Plaintiff's house, Officer Sanna was
responding to what the 911 dispatcher had described as an
attempted assault.  It was therefore reasonable for him to
anticipate that plaintiff may pose a threat to Chirichello.
According to Plaintiff's testimony, however, when Sanna arrived
on the scene, Plaintiff was standing still, between 40 and 50
feet away from Chirichello and Detective Dellorco.  He was not
making verbal threats, acting violently, brandishing a weapon, or
even approaching Chirichello.  Plaintiff simply stated that he
wanted Chirichello off his property.  Drawing all reasonable
inferences in Plaintiff's favor, the circumstances should have
put Sanna on notice that Plaintiff did not pose an immediate
threat to anyone's safety.  Instead of verbally responding to
Plaintiff's statement or investigating the situation, however,
Officer Sanna rushed towards Plaintiff, chest-bumped him, pushed
him backwards, and then asked him to sit on the porch.  When
Plaintiff attempted to go inside his home to avoid further harm,
Officer Sanna struck him in the back, which knocked him off his
feet and caused him to slam into a wall on the side of the house.
Crediting Plaintiff's version of the facts, Sanna had no reason

to believe Plaintiff was attempting to evade arrest or resist arrest by retreating into his home.  According to Plaintiff, Officer Sanna never advised him that he needed to remain outside for questioning, that he was under arrest, or that he simply could not enter his home.  Notably, Chirichello was standing next to Detective Dellorco at this time, more than 40 to 50 feet away, so Officer Sanna only had to contend with Plaintiff.

Given these circumstances, a genuine dispute of material fact exists as to whether Sanna's use of force was objectively reasonable.  Since, according to Plaintiff, he did nothing to provoke Sanna other than attempt to retreat into his home, a reasonable fact-finder could conclude that the force used was excessive.  See, e.g., Gilbert v. Camden City, Civ. No. 04-3268, 2007 WL 1040978, *7 (D.N.J. Apr. 4, 2007) (denying summary judgment on excessive force claim where officers assaulted plaintiffs without provocation).

Defendants argue that Plaintiff's attempt to enter his home rendered him a threat, because Officer Sanna "could not be sure" that he was not attempting to retrieve a weapon.  They analogize this case to Fennimore v. Lower Township, Civ. No. 09-2090, 2011 WL 1705599, *6 (D.N.J. May 4, 2011), where this Court granted summary judgment on an excessive force claim in a very different context.  There, the police officer used pepper spray against the plaintiff, kicked him in the chest, and tackled him to the

18

ground, after being informed that the plaintiff was intoxicated inside the residence, had previously assaulted his son and wife, who was possibly in the residence with him, and had shotguns in the house. Id. at *6. Unlike here, the officer used force only as a last resort, after the plaintiff had ignored repeated requests to exit the residence. Id. Given the plaintiff's active resistance to arrest, the Court concluded that the force used was proportional to the need. Id. Here, Defendants have not pointed to any facts in the record to support their bare allegations that (1) Plaintiff had a firearm in the house, (2) he planned to retrieve it, or (3) Officer Sanna reasonably believed, at the time, that Plaintiff was retreating to his house to obtain a firearm. The Court therefore rejects such unsupported speculation. Moreover, Defendants have failed to show that Plaintiff posed an immediate threat of harm to anyone, particularly since Chirichello, the purported victim, stood 40 to 50 feet away from him. Thus, a reasonable jury could conclude that Officer Sanna used excessive force against Plaintiff in violation of his Fourth Amendment rights.

### b. Clearly Established

Since the Court has found a genuine dispute of material fact as to whether Officer Sanna used excessive force, it now turns to the second prong of the qualified immunity analysis: whether it would have been clearly established to a reasonable officer in

July 2007, that Officer Sanna's conduct was unlawful.

The Supreme Court has clarified that conduct may be clearly established as unlawful, even if "the very action in question [has not] previously been held unlawful." Safford Unified Sch. Dist. # 1 v. Redding, 557 U.S. 364, 129 S.Ct. 2633, 2643 (2009) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)).  The unconstitutionality of outrageous conduct will be obvious, with the result that "the easiest cases don't even arise." Id. (quoting K.H. v. Morgan, 914 F.2d 846, 851 (7th Cir. 1990)). "But even as to action less than an outrage, officials can still be on notice that their conduct violates established law in novel factual circumstances." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002) (internal quotations omitted)).

This is not a case where the law was in controversy at the relevant time.  In July 2007, the law was clear that an officer may not assault an individual without provocation.  See, e.g., Graham, 490 U.S. at 394 (recognizing a right under the Fourth Amendment to be free from the use of excessive force); Kolender v. Lawson, 461 U.S. 352, 366 (1983) (recognizing that even where police officers have the requisite reasonable suspicion, they may only use "some force if necessary" to detain an individual to ask investigatory questions) (emphasis added); Gilbert, 2007 WL 1040978 at *8 (finding it "objectively unreasonable for a police officer to assault a citizen without provocation").  He could

only employ such force as was reasonably necessary to achieve a
lawful objective, such as "securing the safety of himself or
others, or effecting an arrest." Gilbert, 2007 WL 1040978 at *8
(citing Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir.
2005)).  When construed in Plaintiff's favor, the facts show that
he was not resisting or evading arrest or posing a threat of harm
to anyone, and in fact had a right to retreat into his home,
since he had not been detained at that time.[10]  See Florida v.
Royer, 460 U.S. 491, 497-98 (1983) (recognizing the right of a
person who has not been seized to ignore a police officer's
questions and go on his way).  Thus, the fact that Plaintiff did
not heed Officer Sanna's request to sit on the porch does not
change the analysis.  See id.  Viewing the facts in favor of
Plaintiff, the context would have made clear to a reasonable
officer that Plaintiff was lawfully attempting to go into his
house in order to avoid further harm by Officer Sanna, and the
use of such force was therefore unreasonable.

Officer Sanna has not cited any countervailing authority

---

[10] Neither party has argued that Plaintiff was seized under the
Fourth Amendment when Officer Sanna chest-bumped him, pushed him,
or asked him to sit on the porch.  The record reflects that
Officer Sanna may have merely "asked" Plaintiff to sit on the
porch, as opposed to "commanding" him to do so, suggesting that
Plaintiff might have reasonably believed he was free to leave and
thus had not been seized.  See Shuman v. Penn Manor Sch. Dist.,
422 F.3d 141, 147 (3d Cir. 2005) (a person has been seized when,
given the totality of the circumstances, a reasonable person
would have believed that he was not free to leave).  The fact
that Plaintiff retreated into his home after being asked to sit

showing that a reasonable officer could have believed his conduct
comported with established legal standards.  Nor has he shown
that he made a reasonable mistake of fact, which justified his
actions.  Accordingly, he has failed to establish his entitlement
to qualified immunity at this stage.

### 2.   False Arrest Claim

#### a.   Constitutional Violation

"It is well-established that the Fourth Amendment 'prohibits
a police officer from arresting a citizen except upon probable
cause.'"  Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010),
cert. den'd, 131 S. Ct. 1571 (quoting Orsatti v. N.J. State
Police, 71 F.3d 480, 482 (3d Cir. 1995)).  Probable cause
"requires more than mere suspicion."  Id. (internal quotations
and citation omitted).  In the context of a warrantless arrest,
probable cause exists "'when the facts and circumstances within
the arresting officer's knowledge are sufficient in themselves to
warrant a reasonable person to believe that an offense has been
or is being committed by the person to be arrested.'"  Id. at 211
(quoting Orsatti, 71 F.3d at 483; Wilson v. Russo, 212 F.3d 781,
789 (2000)) ("Probable cause exists if there is a fair
probability that the person committed the crime at issue.");
United States v. Laville, 480 F.3d 187, 193 (3d Cir. 2007).
"Probable cause need only exist as to one of the offenses that

_____

on his porch also suggests he believed he was free to leave.

could be charged under the circumstances." <u>Reedy</u>, 615 F.3d at
211 (quoting <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 819 (3d
Cir. 1994)) (internal quotations and brackets omitted).  When
considering whether probable cause existed to support an arrest,
courts look to the totality of the circumstances.  <u>Id.</u> at 211
(citing <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983)).  Officer
Sanna is only entitled to summary judgment at this stage of the
qualified immunity analysis if he shows that a reasonable jury
could not find a lack of probable cause for the arrest, given the
facts as Plaintiff has recounted them.

   "The validity of an arrest is determined by the law of the
state where the arrest occurred." <u>Pollock v. Philadelphia</u>, 403
F. App'x 664, 669 (3d Cir. 2010) (citing <u>United States v. Myers</u>,
308 F.3d 251, 255 (3d Cir. 2002)) (quotations omitted).  Officer
Sanna claims he had probable cause to arrest Plaintiff for
obstructing the administration of law ("Obstruction"), in
violation of N.J. Stat. Ann. 2C:29-1(a),[11] and its sister
statute, resisting arrest, in violation of N.J. Stat. Ann. 2C:29-

---

[11] The "Obstruction" statute provides in relevant part:
>      A person commits an offense if he purposely obstructs,
>      impairs or perverts the administration of law or other
>      governmental function or prevents or attempts to
>      prevent a public servant from <u>lawfully</u> performing an
>      official function by means of flight, intimidation,
>      force, violence, or physical interference or obstacle,
>      or by means of any independently unlawful act. . . .
N.J. Stat. Ann. 2C:29-1(a).

2(a)(1).[12]  He alleges three facts in support of this contention:
(1) Plaintiff ignored his instruction to sit on the porch, (2) he
attempted to flee from the scene, and (3) he resisted arrest.
Notably, Officer Sanna has not supported his arguments with any
citation to the record or any case law interpreting the New
Jersey resisting arrest and obstruction statutes.

The Court first considers whether Officer Sanna had probable
cause to arrest Plaintiff for obstructing the administration of
law.  According to the Court's research, the New Jersey Supreme
Court has interpreted the Obstruction statute to make it unlawful
for a citizen to disobey an officer's reasonable order where that
officer is acting in good faith:

> [W]here an officer's instructions are <u>obviously</u>
> <u>reasonable</u>, <u>in furtherance of his duties</u>, an individual
> toward whom such instructions are directed has a
> correlative duty to obey them.  If his refusal to
> respond results in an obstruction of the performance of
> the officer's proper tasks, this will constitute a
> violation of the disorderly persons statute.

State v. Lashinsky, 404 A.2d 1121, 1126 (N.J. 1979) (emphasis
added); State v. Doss, 603 A.2d 102, 105 (N.J. Super. Ct. App.
Div. 1992) (citations omitted) (finding that the standard set
forth in Lashinsky applies to the Obstruction statute, N.J.S.A.

---

[12] Under N.J. Stat. Ann. 2C:29-2(a)(1),

> [A] person is guilty of a disorderly persons offense if
> he purposely prevents or attempts to prevent a law
> enforcement officer from effecting an arrest. . . .

24

2C:29-1).[13]  The phrase "lawfully performing an official
function" in the Obstruction statute imposes an objective good-
faith requirement on the police officer.  See State v. Crawley,
901 A.2d 924, 935-36 (N.J. 2006), cert. den'd, 549 U.S. 1078
(2006) ("Viewing the [Obstruction] statute in relation to the
resisting arrest, eluding, and escape statutes, we construe
'lawfully performing an official function' to mean a police
officer acting in objective good faith, under color of law in the
execution of his duties."); see also State v. Williams, 926 A.2d
340, 347 (N.J. 2007) ("[A]s a basic precondition for prosecution
under the obstruction statute, the police officers were acting in
good faith and under color of their authority."); State v.
Riggins, 2010 WL 4121296, *7 (N.J. Super. Ct. App. Div. 2010),
cert. den'd, 15 A.3d 21 (N.J. 2011) ("[A]s long as the police are
acting in good faith, a subject's flight from a Terry stop gives
rise to probable cause for obstruction of police under N.J.S.A.
2C:29-1(a)[.]").  "Good faith means 'honesty in belief or
purpose' and 'faithfulness to one's duty or obligation.'"
Crawley, 901 A.2d at 461 n.8.  An officer "who without any basis
arbitrarily detains a person on the street would not be acting in
good faith."  Id.  To have probable cause to arrest someone for

---

[13] It appears to be immaterial, for purposes of this analysis,
whether Officer Sanna asked Plaintiff sit on the porch or ordered
him to do so.  See Lashinsky, 404 A.2d at 1124 (affirming
defendant's conviction for disorderly conduct where he did not
comply when police officer "asked" him to leave the scene of an

obstruction, then, the officer must have been acting in good faith, with honesty and faithfulness to his obligations as a police officer.  Id.

Accepting Plaintiff's version of the facts, Sanna made no attempt to investigate the incident and instead rushed towards him, chest-bumped him, and pushed him.  Plaintiff then attempted to retreat into his home for his own safety.  Based on these facts, a jury could conclude that any directive by Sanna to detain Plaintiff on the porch was not made in good faith, and he therefore lacked probable cause to arrest Plaintiff for obstruction.

Furthermore, the Court rejects Sanna's argument that he had probable cause to arrest Plaintiff for obstruction, because he attempted to "flee".  The New Jersey Supreme Court has interpreted the phrase "by means of flight" in the Obstruction statute to apply only where an individual attempts to leave the scene after being seized during an investigatory stop.  See Crawley, 901 A.2d at 935-36 ("We hold that a defendant may be convicted of obstruction under N.J.S.A. 2C:29-1 when he flees from an investigatory stop."); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 438 (D.N.J. 2011).  Construing the facts and all reasonable inferences in Plaintiff's favor, the Court assumes he had not been seized when he attempted to go into his home to

---

automobile accident).

avoid further harm by Sanna.  See supra, n.10.  Accordingly, he was free to ignore Officer Sanna's questions and go on his way out of concern for his own safety, and he therefore did not "flee" in violation of the Obstruction statute.  See State v. Maryland, 771 A.2d 1220, 1227-28 (N.J. 2001).  A fact-finder could conclude that a reasonable person would have known as much and thus realized that Sanna lacked probable cause to make an arrest for Obstruction.

Turning to Sanna's second argument that he had probable cause to arrest Plaintiff for resisting arrest, the Court again finds summary judgment inappropriate.  Crediting Plaintiff's testimony, the Court must assume that Plaintiff made no attempt to resist Sanna's efforts to arrest him.  Accordingly, a reasonable jury could conclude that Plaintiff lacked probable cause for the arrest on this basis.

Thus, genuine disputes of material fact exist as to whether Officer Sanna violated Plaintiff's Fourth Amendment rights by arresting him without probable cause.[14]

---

[14] The Court notes that Defendants have provided no other basis to support their argument that Officer Sanna had probable cause to arrest Plaintiff.  In their Reply Brief, however, they include one, cryptic and conclusory sentence, which appears to suggest that Officer Sanna may have had probable cause to arrest Plaintiff for assaulting Chirichello.  (Defs.' Reply 13 ("If an assault had occurred, an arrest may have been warranted upon that basis.").)  The Court deems this undeveloped argument waived. See Conroy v. Leone, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (citing Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005)) (finding plaintiff's "undeveloped argument" waived, where it

### b.   Clearly Established

The Court now turns to the second prong of the qualified immunity analysis.  Officer Sanna is only entitled to qualified immunity if he shows that Plaintiff's right to be free from arrest was not clearly established under the circumstances.  <u>See Cuvo v. De Biasi</u>, 169 F. App'x 688, 692 (3d Cir. 2006).  "As a general matter, a right is 'clearly established' when the contours of the right are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  <u>Id.</u> (quoting <u>McGreevy v. Stroup</u>, 413 F.3d 359, 366 (3d Cir. 2005) and <u>Saucier</u>, 533 U.S. at 202).

Viewing the facts in Plaintiff's favor, it is sufficiently clear that Officer Sanna's conduct – arresting Plaintiff for obstruction and resisting arrest without probable cause – violated his Fourth Amendment rights, and a reasonable official would have recognized as much.  Indeed, Plaintiff's Fourth Amendment right to be free from arrest without probable cause was clearly established and not in controversy.[15]  See <u>Mitchell v.</u>

---

raised a new issue for the first time in one conclusory sentence); <u>Tsitsoulis v. Twp. of Denville</u>, Civ. No. 07-4544, 2009 WL 5205276, *8 (D.N.J. Dec. 23, 2009).

[15] The second step of the qualified immunity analysis often turns on "whether a novel issue or a well-established interpretation of the law is in controversy.  If there is doubt about the state of the law, the officer is granted immunity." <u>Couden v. Duffy</u>, 446 F.3d 483, 501-02 (3d Cir. 2006) (Weis, J., dissenting); <u>see also</u> <u>Pollock v. Philadelphia</u>, 403 F. App'x 664, 670 (3d Cir. 2010) (officer was entitled to qualified immunity because at time of arrest, Pennsylvania law was not clearly established, situation

Obenski, 134 F. App'x 548, 550 (3d Cir. 2005) ("There is a Fourth Amendment right to be free from arrest without probable cause, and this right is clearly established.") (citing Groh v. Ramirez, 540 U.S. 551, 563-64 (2004) and Saucier v. Katz, 533 U.S. 194, 207-08 (2001)).  Similarly, the relevant standards for resisting arrest and obstruction in New Jersey were well settled.  See supra.

While it is theoretically possible that Sanna made a reasonable mistake of fact, which might justify the arrest and entitle him to qualified immunity, see Butz v. Economou, 438 U.S. 478, 507 (1978); Pearson v. Callahan, 555 U.S. 223, 231 (2009), he has neither argued this nor cited anything in the record to support such a contention.  Instead, Sanna merely rehashes his disputed version of events, which the Court may not credit at this stage.  He then asserts in a conclusory fashion, without reference to the record or case law, that Plaintiff's conduct "clearly disrupted the investigation." (Defs.' Br. 15.)  The Court therefore considers a mistake-of-fact defense waived at this juncture.  Cf. Conroy, 316 F. App'x at 144 n.4 (finding plaintiff's "undeveloped argument" waived); Tsitsoulis, 2009 WL 5205276 at *8; see also United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for

was unusual, and warning signs presented were sufficiently serious that reasonable officer could have thought plaintiff was violating law).

29

truffles buried in briefs."). Moreover, Officer Sanna has not pointed to any facts concerning such relevant issues as whether he acted in good faith or whether a reasonable officer would have believed Plaintiff had been seized at the time he attempted to retreat into his home. Accordingly, Sanna has not established his entitlement to qualified immunity at this stage, and the Court denies summary judgment on this claim.

### 3. **Monell** Claim

Count III of the Complaint asserts a claim against Lumberton Township ("Lumberton") for supervisory liability. Lumberton seeks summary judgment, alleging that Plaintiff has not produced any evidence supporting this claim or identified any policy, practice, or custom that created an unreasonable risk to Plaintiff's rights.

In § 1983 cases, a municipality is not vicariously liable for the misconduct of its police. See Connick v. Thompson, -- U.S. --, 131 S.Ct. 1350, 1359 (2011) (citations omitted); Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Rather, such liability only attaches where the municipality had in place an official custom or policy, which directly caused the constitutional deprivation. See Connick, 131 S.Ct. at 1359 (citing Monell, 436 U.S. at 691, 694); Jiminez, 503 F.3d at 249 (citing City of Canton v. Harris, 489 U.S. 378, 385

30

(1989)).[16]  Plaintiff's burden is a high one.  See King v. Cnty.
of Gloucester, 302 Fed. Appx. 92, 99 (3d Cir. 2008).  In Board of
County Commissioners of Bryan County v. Brown, the Supreme Court
explained:

> [I]t is not enough for a § 1983 plaintiff merely to
> identify conduct properly attributable to the
> municipality.  The plaintiff must also demonstrate
> that, through its deliberate conduct, the municipality
> was the "moving force" behind the injury alleged.  That
> is, a plaintiff must show that the municipal action was
> taken with the requisite degree of culpability and must
> demonstrate a direct causal link between the municipal
> action and the deprivation of federal rights.

520 U.S. 397, 404 (1997) (emphasis in original).  Notably, a
"municipality's culpability for a deprivation of rights is at its
most tenuous where a claim turns on a failure to train."
Connick, 131 S.Ct. at 1359 ("As our precedent makes clear,
proving that a municipality itself actually caused a
constitutional violation by failing to train the offending
employee presents difficult problems of proof, and [requires] a
stringent standard of fault, lest municipal liability under §

---

[16] "'Policy' includes official proclamations made by a municipal
decisionmaker with final authority, and 'custom' is defined as
'practices of state officials . . . so permanent and well settled
as to virtually constitute law.'"  Kelly v. Borough of Carlisle,
622 F.3d 248, 263 (3d Cir. 2010) (quoting Berg v. Cnty. of
Allegheny, 219 F.3d 261, 275 (3d Cir. 2000)).  It appears
Plaintiff has challenged a custom, as opposed to a policy.  The
parties do not dispute that Lumberton's police chief was a
policymaker for purposes of Monell liability.  See Beck v.
Pittsburgh, 89 F.3d 966, 973 n.8 (3d Cir. 1996), cert. den'd, 519
U.S. 1151 (1997).

1983 collapse into respondeat superior.") (internal citations and quotations omitted).

Thus, Plaintiff must establish that Lumberton's inadequate training or supervision of Sanna amounted to deliberate indifference to Plaintiff's rights and thereby caused his injuries.  See Beck, 89 F.3d at 971-72 (quoting City of Canton, 489 U.S. at 388); see also Groman v. Twp. Of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ("deliberate indifference" standard applies to both failure-to-train and negligent supervision claims).  To prove deliberate indifference, Plaintiff must show that Lumberton "was on notice that, absent additional specified training, it was 'highly predictable'" that Sanna would use excessive force as a result.  Connick, 131 S.Ct. at 1365.  In fact, Plaintiff must prove that this was "so predictable" that its failure to train actually amounted to "conscious disregard" for Plaintiff's Fourth Amendment rights.  Id. (quoting Bryan Cnty, 520 U.S. at 406 and City of Canton, 489 U.S. at 389) (emphasis in original).  Stated another way, Plaintiff must show "a pattern of similar violations that would establish that the policy of inaction was the functional equivalent of a decision by [Lumberton] itself to violate the Constitution."  Id. (quoting City of Canton, 489 U.S. at 389) (internal quotations and brackets omitted).

The undisputed record belies Plaintiff's argument that

Lumberton failed to train Officer Sanna.  Police records show
that Sanna received use-of-force training on October 23, 2004,
and again on June 13, 2007, less than three weeks before this
incident.[17]  (Pl.'s Ex. 9.)  Plaintiff has not pointed to any
facts that call into question the sufficiency of that training.

Plaintiff also argues that three Internal Affairs complaints
were filed against Sanna for using excessive force.  As discussed
above, however, only one of them (involving Albert Gunter) was
filed prior to this incident and is thus relevant to the Monell
inquiry.  See, supra, n.8.  Notably, Lumberton's Internal Affairs
department investigated this matter and determined that Sanna was
not at fault.  (Sanna Dep. 53:5-12.)  Although the dates are not
clear from the record, it appears that Internal Affairs initiated
this investigation well before the incident here occurred in July
2007, since (1) the Gunter incident occurred in November 2006,
and (2) all investigations begun in 2006 and 2007 were resolved
by the end of 2007.  (See Internal Affairs Summary Reports, Pl.'s
Ex. 14.)  Moreover, Plaintiff has neither argued nor cited any
facts to suggest that Lumberton failed to take any action on the
Gunter matter until eight months later, after the incident

---

[17] Plaintiff ignores these records and instead points to Sanna's
deposition testimony, where he states that he was "not positive",
but believed he had received in-service training on the use of
force. (Pl.'s Opp. Br. 24 (citing Sanna Dep. 37:5-11).)  The
Court does not find Sanna's testimony inconsistent with the
record.  In any event, his lack of certainty is irrelevant, since
Plaintiff has not disputed the police records showing that Sanna

involving Plaintiff occurred.  Accordingly, such an inference
would be unreasonable.

Although he concedes that Lumberton's investigation of the
Gunter matter resolved in Sanna's favor, Plaintiff points out
that between 2001 and 2007, not a single Internal Affairs
complaint against an officer for excessive force was found
sustained.  (Pl.'s Ex. 14.)  He seems to suggest (without
actually arguing) that this reflects a custom by Lumberton of not
investigating complaints properly.   Plaintiff has not, however,
pointed to anything in the record to support this contention.
Such unsupported speculation cannot defeat summary judgment.
Moreover, the small sample size – 13 complaints over the course
of seven years - causes the Court to question the propriety of
drawing such an inference.   The data more readily supports the
conclusion that Lumberton police officers used force
appropriately.

Plaintiff also cites the fact that Sanna filed "use-of-
force" reports with the Lumberton police department for six
separate matters during the fifteen months prior to this
incident.[18]  (Pl.'s Exs. 17-22.)  The record provides no
information, however, as to the significance of this data, such

_____

did in fact receive use-of-force training on the above dates.
[18] Again, Plaintiff cites to use-of-force reports, which Sanna
filed <u>after</u> the relevant time frame here.  The Court only
considers those reports, which Lumberton would have been aware of
at the time this incident occurred in July 2007.  <u>See</u>, <u>supra</u>,

as whether this number is higher or lower than average for a Lumberton police officer.[19]  The Court therefore gives little weight to this fact.

Accordingly, Plaintiff has failed to put forth any evidence that (1) Lumberton had a custom of failing to train or supervise Sanna, which amounted to deliberate indifference towards Plaintiff's rights, and (2) that such a custom was the "moving force" behind Plaintiff's alleged injuries.  Summary judgment on this claim is therefore granted.

### B.   Punitive Damages

Defendants urge the Court to dismiss Plaintiff's request for punitive damages.  First, Defendants argue that Plaintiff may not seek such relief under federal law.  Since Plaintiff's <u>Monell</u> claim has been dismissed, his request for punitive damages against Lumberton is now moot.  In any event, Plaintiff apparently concedes that such relief is not proper.  <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) (punitive damages in § 1983 actions may not be awarded against a municipality).

---

n.7.
[19] Plaintiff asserts additional arguments, each of which the Court has considered and found meritless.  For example, Plaintiff contends that the State Attorney General's model form for use-of-force incident reports is slightly different from Lumberton's incident report.  Plaintiff fails, however, to illuminate the relevance of the discrepancy to this case, and the Court has found none.

Defendants further argue that punitive damages may not be awarded against Officer Sanna personally, because his actions did not rise to the level of malice or disregard for Plaintiff's rights.  Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Feldman v. Philadelphia Housing Auth., 43 F.3d 823, 833 (3d Cir. 1994) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)) (emphasis added). Plaintiff has testified that when Officer Sanna arrived on the scene, he made no attempt to investigate the incident and, without provocation, chest-bumped him, pushed him, and then struck him in the back as he was attempting to retreat into his house to avoid further harm.  Giving Plaintiff the benefit of all reasonable inferences, the Court finds the evidence sufficient to support a claim for punitive damages against Sanna under federal law.

Defendants also urge the Court to dismiss punitive damages with respect to Count IV, which alleges state constitutional claims.  Unlike violations of the United States Constitution, which are actionable through § 1983, the New Jersey Constitution may itself provide a private cause of action for violations of its provisions.  See Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999) ("The New Jersey Supreme Court has held

that the Constitution of the State of New Jersey may provide a private cause of action premised upon alleged violations of the State constitution.") (citing <u>Peper v. Princeton Univ. Bd. of Trustees</u>, 389 A.2d 465, 476 (1978)); <u>Coursey v. City of Camden</u>, Civ. No. 05-2820, 2008 WL 834383, *8 (D.N.J. Mar. 27, 2008) (recognizing plaintiff's right to bring claims against city of Camden for unreasonable search and seizure and a violation of equal protection under New Jersey Constitution).

The parties argue whether punitive damages are appropriate under the Punitive Damages Act, N.J. Stat. Ann. 2A:15-5.9, <u>et seq.</u>, but skirt the threshold issue of whether the New Jersey State Constitution even permits this.[20]   Accordingly, to the extent Plaintiff wishes to pursue punitive damages against Sanna and Lumberton, it shall file supplemental briefing setting forth the propriety of such relief.

C.   **Claims under Counts I and II**

Defendants seek dismissal of Count I to the extent that it asserts claims under the First, Fifth, Sixth, and Eighth Amendments.   Defendants contend that Plaintiff has failed to

_____

[20]  In the context of the New Jersey Civil Rights Act, the Court's research shows that courts in this district have precluded punitive damages against municipalities, but have not addressed the propriety of such damages against individual defendants. <u>See</u>, <u>e.g.</u>, <u>Cruz v. Cnty. of Bergen</u>, Civ. No. 10-3322, 2011 WL 1211396, *3 (D.N.J. Mar. 29, 2011); <u>Vandegrift v. Bowen</u>, Civ. No. 07-2623, 2009 WL 1913412, *6 (D.N.J. June 30, 2009); <u>Damiani v. W. Deptford Twp.</u>, Civ. No. 07-2884, 2008 WL 656041, *4-5 (D.N.J. Mar. 7, 2008).

articulate any facts that could give rise to such claims.  The
Court agrees.  Indeed, Plaintiff did not oppose this motion,
having apparently conceded it.

Additionally, Defendants move to dismiss Plaintiff's § 1983
conspiracy claim alleged in Count II, which this Court previously
dismissed against Defendant Chirichello for failure to state a
claim.[21]  [Dkt. Ent. 16.]  Plaintiff did not oppose this motion,
and the Court therefore assumes, absent any indication to the
contrary, that Plaintiff has conceded this claim.

### D.   Plaintiff's Expert Report

Finally, Defendants move to bar Plaintiff's expert report on
the grounds that it constitutes a net opinion in violation of
Federal Rule of Evidence 702.[22]  Because the resolution of this

---

[21] Chirichello is no longer a party to this action.  On June 20,
2011, the parties stipulated to a dismissal of all claims against
him.  [Dkt. Ent. 45.]

[22] Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge,
> skill, experience, training, or education may testify
> in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in
> issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles
> and methods; and

motion requires a <u>Daubert</u> hearing to determine the admissibility of expert testimony, the Court will deny this motion without prejudice and permit Defendants the opportunity to renew such motion prior to trial.  <u>See Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579, 589 (1993) (recognizing district court's role as gatekeeper to ensure that all expert testimony and evidence is relevant and reliable); <u>Martin v. Blaser Swisslube, Inc.</u>, Civ. No. 03-6116, 2005 WL 3454291, *7 (D.N.J. Dec. 16, 2005) ("A motion for summary judgment should be denied without prejudice pending the outcome of a <u>Daubert</u> hearing, when disposition of the motion depends on a determination of the admissibility of expert testimony.").

## IV.  Conclusion

For the foregoing reasons, Defendants' motion is granted in part and denied in part.  An appropriate Order will issue herewith.

Date: <u>March 29, 2012</u>                <u>s/Renée Marie Bumb</u>
                                          RENEE MARIE BUMB
                                          United States District Judge

---

            (d) the expert has reliably applied the principles and
        methods to the facts of the case.